UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

A.S.,

                    Plaintiff,              Civil No. 14-147 (NLH/KMW)

v.                                          **OPINION**

HARRISON TOWNSHIP BOARD OF
EDUCATION, et al.,

                    Defendants.

_____

**HILLMAN, District Judge**

Presently before the Court is the motion of Defendants, Christopher Cerf and the New Jersey Department of Education (hereafter, "NJDOE"), to dismiss Plaintiff's Second Amended Complaint [Doc. No. 29] (hereafter, "SAC"). The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, Defendants' motion is granted, and the claims against the NJDOE and Commissioner Cerf contained in Counts V and VI will be dismissed without prejudice.

**I.   BACKGROUND**

The minor Plaintiff, A.S., now a seven year-old student, has numerous alleged disabilities, including autism spectrum disorder, attention deficit hyperactivity disorder, epilepsy, and hearing impairment. (SAC ¶ 4.) A.S. resides with his

1

parents and legal guardians, Plaintiffs H.S. and M.S., in the
Township of Mullica Hill, New Jersey. (Id. ¶ 5.) Defendant
Harrison Township Board of Education (hereafter, "Harrison BOE")
is a "Local Educational Authority," as defined by 20 U.S.C. §
1401, responsible for ensuring compliance with certain federal
mandates for school-aged students residing in the Township of
Mullica Hill. (Id. ¶ 7.) Defendant NJDOE is a "State
Educational Authority," as defined by 20 U.S.C. § 1401,
responsible for ensuring compliance with certain federal
mandates for school-aged students. (Id. ¶ 6.) Defendant Cerf
is the Commissioner of the NJDOE, serving as New Jersey's chief
executive school officer and as Secretary of the State Board of
Education. (Id.) Commissioner Cerf is being sued in his
individual and official capacities. (Id.)

On October 29, 2012, when A.S. was five years old,
Plaintiffs filed a due process petition pursuant to the
Individuals with Disabilities Education Act of 2004, 20 U.S.C. §
1400 et seq. (hereafter, "IDEA"), Section 504 of the
Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with
Disabilities Act, 42 U.S.C. § 12101 et seq. (hereafter, "ADA").
(Id. ¶ 12.) In the petition, Plaintiffs sought several
remedies, such as a finding that A.S. should be classified and
provided special education; that the Harrison BOE should
maintain A.S. at Cherrywood Academy and Private Preschool for

2

the remainder of the current school year; that the Harrison BOE should provide A.S. with compensatory education for the period of time it should have known that A.S. was not receiving a free and appropriate education (hereafter, "FAPE") in the least restrictive environment; that the Harrison BOE should reimburse Plaintiffs for tuition, transportation and related costs at Cherrywood; and other unspecified remedies. (Id. ¶ 13.)

Defendant NJDOE transmitted the matter to the New Jersey Office of Administrative Law (hereafter, "NJOAL") on December 4, 2012 for an initial hearing. (SAC ¶ 14.) The hearing was not held until March 18, 2013, although the hearing was required to be held, according to Plaintiffs, by November 29, 2012. (Id.) The NJOAL held eight days of hearings on the petition between March 18, 2013 and September 11, 2013. (Id. ¶ 15.)

An Administrative Law Judge entered a final decision on October 11, 2013, which provided:

> It is **ORDERED** that the petition of parents H.S. and M.S. on behalf of A.S. is **GRANTED**. A.S. shall be classified and provided special education. The District shall compensate the parents and reimburse them the co-pays for tuition for the 2012-13 school year in the amount of $2,460.00. I also **ORDER** that the transportation expense of $1,321.84 for mileage reimbursement shall be paid to the parents by the District.
>
> I further **ORDER** that the petition of the District to conduct a pediatric neurological evaluation of A.S. in order to determine the present state of his disability is **GRANTED**.

3

> Pending completion of that evaluation, A.S.
> shall be classified as other health impaired
> and shall be provided with an IEP and
> special-education services designed to
> accommodate his particular needs.  A 504
> plan shall also be formulated to maximize
> his access to education in the least
> restrictive environment.

(SAC ¶ 16.)  Thus, according to the Order, the Harrison BOE was
to pay Plaintiffs H.S. and M.S. a total of $3,781.84.  The Order
did not specify a time period for compliance.  (See Compl., Ex.
(Decision of NJOAL) at 40-41 [Doc. No. 14-1].)

On October 24, 2013, thirteen days after the Order was
entered, "after numerous prior unsuccessful attempts to get
Defendant Harrison to pay the ordered reimbursements,"
Plaintiffs complained to the NJDOE that the Harrison BOE had
failed to comply with the Order.  (SAC ¶ 18.)  The NJDOE
purportedly waited until December 4, 2013 to direct the Harrison
BOE to comply with the October 11, 2013 Order.  (Id. ¶ 19.)  The
Harrison BOE allegedly complied with the Order on December 17,
2013.  (Id.)

On January 9, 2014, Plaintiff filed a complaint in this
Court alleging violations of the IDEA, Section 504 of the
Rehabilitation Act, 29 U.S.C. § 794(a), and the New Jersey Law
Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 et
seq..  Based on Plaintiff's allegations, Counts I through IV are

4

directed at the Harrison BOE and fictitious defendants,[1] Count V is directed against the NJDOE, NJDOE Commissioner Cerf, and the Harrison BOE, and Count VI is directed at the NJDOE and Commissioner Cerf.

## II.  **<u>JURISDICTION</u>**

The Court exercises subject matter jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

---

[1] The SAC sets forth a number of additional facts concerning the Harrison BOE's purported non-compliance with the October 11, 2013 Order of the ALJ.  These facts relate to claims against the Harrison BOE and are not relevant to the motion to dismiss presently before the Court.  The Court notes that the Harrison BOE filed a motion to dismiss [Doc. No. 15], which was administratively terminated by Order of the Court on September 22, 2014 because the parties were attempting to resolve the matter by way of a settlement.  (Order [Doc. No. 55] 1-2.)  The Order provided that the motion would be reinstated within sixty days if the parties were unable to reach a settlement.  It does not appear the parties resolved the claims between them and sixty days have now passed.  The Court has reviewed the Harrison BOE's motion and notes that neither the Harrison BOE nor Plaintiffs address whether Plaintiffs have standing to assert the claims in Count V directed at the Harrison BOE.  Because the Court must be assured that Plaintiffs have standing to assert the claims in this case, and to avoid piecemeal resolution of the pending motion, the Court will dismiss the Harrison BOE's motion without prejudice, with right to refile addressing the standing issue in light of the analysis contained in this Opinion.  Any such motion may also include the arguments contained in the previously-filed motion [Doc. No. 15] with respect to Count IV.  The Court also notes that Plaintiffs recently filed a motion for summary judgment [Doc. No. 57], which will be decided by separate Opinion and Order.

III. **STANDARD FOR MOTION TO DISMISS**

Defendants NJDOE and Commissioner Cerf raise two challenges to Plaintiffs' SAC. First, Defendants NJDOE and Commissioner Cerf argue that Count V should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). Second, the NJDOE and Commissioner Cerf seek dismissal of the claim against Commissioner Cerf in Count VI pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

A motion to dismiss for lack of standing implicates Federal Rule of Civil Procedure 12(b)(1) because standing is a matter of subject matter jurisdiction. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). The standard to be applied when deciding a motion under Rule 12(b)(1) depends on the nature of the motion.

Where a party argues that the complaint on its face is insufficient to invoke the Court's subject matter jurisdiction, such as a claim that the complaint fails to present a federal question or fails to demonstrate diversity of citizenship, then

---

[2] For the reasons that follow, the Court finds that Plaintiffs lack standing to obtain from the NJDOE or Commissioner Cerf the relief sought in Count VI. Accordingly, the Court does not address whether the claim against Commissioner Cerf in Count VI is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

the Court applies the same standard as utilized in deciding a motion under Rule 12(b)(6).  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir. 1977)).  In other words, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).

If a party argues that the court lacks subject matter jurisdiction because of the facts of the case, such as a claim that the plaintiff lacks standing due to mootness, the Court may consider evidence outside of the pleadings.  Constitution Party, 757 F.3d at 358.  "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891.  In cases challenging the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proof that jurisdiction exists.  Id.

IV.  **ANALYSIS**

    A.   **Motion to Dismiss Count V for Lack of Standing**

       Defendants NJDOE and Commissioner Cerf contend that Count V, which purports to state a cause of action for alleged violations of the IDEA, the ADA, and Section 504 of the Rehabilitation Act, fails to present a live case or controversy as required by Article III of the United States Constitution. (State Defs.' Mot. to Dismiss (hereafter, "Defs.' Br.") 7.)  In Count V, Plaintiffs aver that the NJDOE "failed to perform its legal duty to enforce the 10/11/13 Order in a timely manner[,]" which has purportedly "deprived Plaintiffs of the benefit of the 10/11/13 Order . . . [.]"  (SAC ¶¶ 61, 62.)  Plaintiffs seek relief against the NJDOE in the form of a declaration that the NJDOE failed to enforce the October 11, 2013 Order in a timely manner, a permanent injunction "requiring Defendant NJDOE to enforce each provision of NJOAL Orders effective on the date of entry unless otherwise indicated[,]" and attorney's fees, expert's fees, and costs.  (Id. at 16.)

       The NJDOE and Commissioner Cerf specifically argue that the NJDOE already enforced the October 11, 2013 Order, noting that the NJDOE sent a letter on December 4, 2013 to the Harrison BOE directing it to provide documentation of compliance with the ALJ's final decision by no later than December 23, 2013.

(Defs.' Br. 7; Cert. of Caroline Jones, Deputy Attorney General
(hereafter, "Jones Cert.", Ex. B.)   The Harrison BOE provided
documentation that Plaintiffs had been paid on December 17,
2013.  (Jones Cert., Ex. C.)[3]  Plaintiffs' counsel, in fact,
confirmed receipt of payment.  (Jones Cert., Ex. E.)  Plaintiffs
argue that even though they have received payment, their claims
are not moot because the NJDOE failed to comply with its
statutory duty under N.J.A.C. 6A:14-2.7(t) by "needless[ly]
delay[ing]" in carrying out its duty to enforce.  (Opp. to
NJDOE's Mot. to Dismiss (hereafter, "Pls.' Br.") 3.)  According
to Plaintiffs, in light of the NJDOE's past conduct there is a
likelihood that the NJDOE will refuse and/or delay in carrying
out its duty to enforce an ALJ's order in the future.  (See id.
at 5; SAC ¶ 61.)

---

[3] The Court notes that the NJDOE and Commissioner Cerf, in an
effort to demonstrate that Plaintiffs received payment, filed
several documents [Doc. No. 24-7] which contain the full name of
one of the plaintiffs, even though Plaintiffs are identified
throughout this action only by their initials to protect the
privacy of the minor plaintiff.  The documents filed by
Defendants include a certified mail receipt, an envelope,
invoices and copies of checks with the name of the minor
plaintiff's father.  It appears that these documents could be
redacted, such that only the initials are visible on the
electronic docket.  Given the interest in protecting the privacy
of the minor plaintiff and the availability of a less
restrictive alternative, see Fed. R. Civ. P. 5.2(a)(3), the
Court will direct the Clerk to seal the documents contained at
[24-7] pursuant to Local Civil Rule 5.3(c) and require
Defendants NJDOE and Commissioner Cerf to file redacted versions
of these documents on the Court's electronic filing system.

Article III, Section 2 of the Constitution limits the
"judicial power" of the United States to the resolution of
certain "cases" and "controversies."  Valley Forge Christian
Coll. v. Ams. United for Separation of Church & State, 454 U.S.
464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).  "The
requirements of Art. III are not satisfied merely because a
party requests a court of the United States to declare its legal
rights, and has couched that request . . . in terms that have a
familiar ring to those trained in the legal process."  Id.  The
"case" or "controversy" requirement is enforced through a number
of justiciability doctrines, which include standing, ripeness,
mootness, the political-question doctrine, and the prohibition
on advisory opinions.  Toll Bros., Inc. v. Twp. of Readington,
555 F.3d 131, 137 (3d Cir. 2009).

"[T]he doctrine of standing serves to identify those
disputes which are appropriately resolved through the judicial
process."  Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S. Ct.
1717, 109 L. Ed. 2d 135 (1990).  A party who seeks to invoke the
Court's jurisdiction must demonstrate that he has standing by
showing that he has suffered an "actual or threatened injury,"
that the injury is traceable to the conduct of the defendant,
and that the injury is "likely to be redressed by a favorable
decision."  Valley Forge Christian Coll., 454 U.S. at 472, 102
S. Ct. 752 (internal quotations omitted).  "This triad of injury

in fact, causation, and redressability constitutes the core of
Article III's case-or-controversy requirement, and the party
invoking federal jurisdiction bears the burden of establishing
its existence."   Steel Co. v. Citizens for a Better Env't, 523
U.S. 83, 103-04, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).
"[A] plaintiff must demonstrate standing separately for each
form of relief sought."   Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs., 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d
610 (2000) (citing City of Los Angeles v. Lyons, 461 U.S. 95,
109, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); Lewis v. Casey,
518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606
(1996)).

Even if a plaintiff has standing at the time suit is
instituted, the case may be dismissed if it becomes moot.  "[A]
case is moot when the issues presented are no longer 'live' or
the parties lack a legally cognizable interest in the outcome."
Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L.
Ed. 2d 491 (1969).  The mootness doctrine requires that "an
actual controversy [is] extant at all stages of review, not
merely at the time the complaint is filed."  Steffel v.
Thompson, 415 U.S. 452, 459 n. 10, 94 S. Ct. 1209, 39 L. Ed. 2d
505 (1974).  "'A case might become moot if subsequent events
made it absolutely clear that the allegedly wrongful behavior
could not reasonably be expected to recur.'"  Friends of the

Earth, 528 U.S. at 189, 120 S. Ct. 693 (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968)).  Mootness may not become an issue until the case has been brought and litigated.  Id. at 191.

There is an exception to the mootness doctrine where conduct is capable of repetition yet evades review.  Spencer v. Kemna, 523 U.S. 1, 17, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998). This exception applies only where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."  Id. (internal quotation marks omitted).

In this case, Plaintiffs seek in Count V a declaration that the NJDOE failed to perform its legal duty to enforce the October 11, 2013 Order of the ALJ in a timely manner.  (SAC 16.) Plaintiffs also seek "a permanent injunction requiring Defendant NJDOE to enforce each provision of NJOAL Orders effective on the date of entry unless otherwise indicated."  (Id.)  As noted above, Plaintiffs must demonstrate standing for each form of relief sought.

"In order to establish a claim for injunctive relief in a federal forum, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct."

12

Bostrom v. New Jersey Div. of Youth & Family Servs., 969 F.
Supp. 2d 393, 417 (D.N.J. 2013).  "'Past exposure to illegal
conduct does not in itself show a present case or controversy
regarding injunctive relief . . . if unaccompanied by any
continuing, present adverse effects."  Id. (quoting Lyons, 461
U.S. at 102, 103 S. Ct. 1660).  The plaintiff must show a "real
or immediate threat that [he] will be wronged again -- a
'likelihood of substantial and immediate irreparable injury.'"
Lyons, 461 U.S. at 111, 103 S. Ct. 1660 (internal citation
omitted).

Here, Plaintiffs contend that the NJDOE "is capable of
repeating its conduct," but they provide no facts to support
this conclusory assertion.  (See SAC 16.)  In this regard,
Plaintiffs do not allege that there may be future orders of the
ALJ concerning A.S. and the Harrison BOE, or that the Harrison
BOE will not comply with such orders should any be entered.
Moreover, in the event there are future orders that are not
followed by the Harrison BOE, Plaintiffs fail to allege facts to
demonstrate that the NJDOE will not perform in accordance with
its statutory duties with respect to any such orders.  Even
assuming that the NJDOE did not act timely in ensuring
compliance with the October 11, 2013 Order, as Plaintiffs aver,
this isolated past incident does not support the conclusion that
another violation of law by the NJDOE is imminent.

Plaintiffs therefore do not meet their burden of demonstrating that they are under threat of suffering an "injury in fact" that is concrete, particularized, and actual or imminent.[4]  As such, Plaintiffs do not have standing to seek in Count V prospective injunctive relief against the NJDOE or Commissioner Cerf.  See Lyons, 461 U.S. at 109, 103 S. Ct. 1660 (explaining that injunction without imminent violation of law is inappropriate); A.M. ex rel. J.M. v. New York City Dep't of Educ., 840 F. Supp. 2d 660, 677 (E.D.N.Y. 2012) (court denied request for injunction to "'direct the DOE to fully comply with the protocol/procedures the State has developed to accommodate children . . . pursuant to federal laws[,]'" noting that "'an 'obey the law' order entered in a case arising under statutes so general as the ADA and Rehabilitation Act would not pass muster under Rule 65(d) of the Federal Rules of Civil Procedure, which requires that injunctions be 'specific in terms' and 'describe

---

[4] Alternatively, Plaintiffs' claim in Count V fails because it is not ripe.  The "injury in fact" element required for standing "often converges with ripeness" when a party seeks prospective injunctive relief.  Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006).  "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury for standing."  Id.  Both the standing inquiry and the ripeness inquiry in this case are distilled down to the same question: whether Plaintiffs have sufficiently alleged an imminent and concrete threat of future injury.  See id. Plaintiffs have not met this obligation; indeed, the record is devoid of facts to support Plaintiffs' theory that the NJDOE is likely to repeat its allegedly unlawful conduct.

in reasonable detail . . . the act or acts sought to be restrained.'"") (internal citations omitted), aff'd, 513 F. App'x 95 (2d Cir. 2013), cert. denied, 134 S. Ct. 809, 187 L. Ed. 2d 597 (2013); Nader v. Democratic Nat'l Comm., 555 F. Supp. 2d 137, 152 (D.D.C. 2008) (court denied plaintiffs' request to enjoin defendants from engaging in "'future violations of law[,]'" noting that "courts do not issue entirely prospective decrees enjoining parties from engaging in 'unlawful conduct' ex ante without enunciating the actions contemplated or undertaken[.]"), aff'd, 567 F.3d 692 (D.C. Cir. 2009).  It is entirely conjectural that circumstances will arise requiring the NJDOE to enforce an order of an ALJ with respect to A.S., and any prospective relief at this time would be wholly advisory.

In so finding, the Court notes that the parties address the issue of mootness in light of Plaintiffs' receipt of reimbursement pursuant to the ALJ's October 11, 2013 Order. Because Plaintiffs seek injunctive relief proscribing future conduct, their receipt of reimbursement does not render their claim in Count V moot.[5]  Nonetheless, Plaintiffs' lack of

---

[5] The Court notes that mootness challenges have been denied in IDEA cases when the conduct giving rise to such claims is capable of repetition but evades review.  See, e.g., LV v. New York City Dep't of Educ., No. 03 Civ. 9917 (RJH), 2005 WL 2298173, at *5 n.4 (S.D.N.Y. Sept. 20, 2005) (court denied defendants' argument that minors' claims were mooted when they received full payment following commencement of action, because plaintiffs alleged that delays were due to defendants' "systemic

standing warrants dismissal of Count V to the extent Plaintiffs

seek to obtain injunctive relief against the NJDOE or

Commissioner Cerf.

Plaintiffs also seek in Count V a declaration that the

NJDOE "failed to perform its legal duty to enforce the 10/11/13

Order in a timely manner and is capable of repeating its

conduct." (SAC ¶ 61.)  The Court notes that Plaintiffs do not

seek monetary damages,[6] and injunctive relief of the nature

sought by Plaintiffs is not available for the reasons discussed

---

failure to ensure timely enforcement."); Brandon A. ex rel.
David A. v. Donahue, No. Civ. 00-025-B, 2001 WL 920063, at *5-6
(D.N.H. Aug. 8, 2001) (where plaintiff alleged he was denied
timely hearing pursuant to New Hampshire Department of Education
policy, court denied defendants' mootness argument because it
was not "absolutely clear that [plaintiff] and other disabled
students could not face a wait of more than 45 days before
receiving a future decision from the NHDOE[.]").  In this case,
however, the Plaintiffs do not argue that there is a systemic
failure to ensure timely compliance with Orders from the NJOAL,
a policy of encouraging delayed enforcement, or examples of
other instances in which the NJDOE failed to ensure timely
compliance with Orders of the NJOAL.  Accordingly, unlike the
aforementioned cases, this case lacks a factual predicate to
support a finding that the NJDOE is likely to violate
Plaintiffs' rights in the future.

[6] Plaintiffs seek an award of attorney's fees and costs, but "a
plaintiff cannot achieve standing to litigate a substantive
issue by bringing suit for the cost of bringing suit."  Steel
Co., 523 U.S. at 107, 118 S. Ct. 1003.  "The litigation must
give the plaintiff some other benefit besides reimbursement of
costs that are a byproduct of the litigation itself."  Id.
Accordingly, "[a]n 'interest in attorney's fees is . . .
insufficient to create an Article III case or controversy where
none exists on the merits of the underlying claim.'"  Id.
(quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S.
Ct. 1249, 108 L. Ed. 2d 400 (1990)).

above.  Therefore, even if Plaintiffs were to succeed in

obtaining a declaration that the NJDOE acted unlawfully, that

finding would not result in any action or cessation of action by

the NJDOE.  The Supreme Court has explained:

> In all civil litigation, the judicial decree
> is not the end but the means. At the end of
> the rainbow lies not a judgment, but some
> action (or cessation of action) by the
> defendant that the judgment produces-the
> payment of damages, or some specific
> performance, or the termination of some
> conduct. Redress is sought through the
> court, but from the defendant. This is no
> less true of a declaratory judgment suit
> than of any other action. The real value of
> the judicial pronouncement-what makes it a
> proper judicial resolution of a "case or
> controversy" rather than an advisory opinion
> -- is in the settling of some dispute which
> affects the behavior of the defendant
> towards the plaintiff.

Hewitt v. Helms, 482 U.S. 755, 761, 107 S. Ct. 2672, 96 L. Ed.

2d 654 (1987)(emphasis in original).  Declaratory relief here

would amount to nothing more than an advisory opinion regarding

the wrongfulness of the NJDOE's past conduct.  The Court will

not entertain a claim seeking a declaration that the NJDOE acted

wrongfully when there is no redressable injury arising

therefrom.  Count V will be dismissed for lack of standing

insofar as Plaintiffs assert claims against the NJDOE and

Commissioner Cerf.

**B.  Motion to Dismiss Count VI Against Commissioner Cerf**

In Count VI, Plaintiffs assert claims against the NJDOE and Commissioner Cerf under the IDEA.  The claim against Commissioner Cerf is brought against him in both his individual and official capacities.  Plaintiffs specifically aver that the NJDOE failed to comply with IDEA, Part B, in that it purportedly failed to ensure that Plaintiffs received a final written decision from the New Jersey Office of Administrative Law within seventy-five days of the filing of their due process petition.  (SAC ¶¶ 68, 69.)  Plaintiffs seek declaratory relief in the form of a finding that the NJDOE "has committed a per se violation of Plaintiffs' rights under IDEA to receive final written due process decision in a timely manner[,]" that the NJDOE "has committed a substantive violation of Plaintiffs' rights under IDEA[,]" and a finding that the NJDOE "unnecessarily delayed Plaintiffs' right under IDEA to receive[] a final written decision in a timely manner."  (<u>Id.</u> at 17-18.)  Plaintiffs also seek a permanent injunction requiring the NJDOE to "provide final written due process decisions in a timely manner," as well as attorney's fees, expert fees and costs.  (<u>Id.</u> at 18.)

Defendants NJDOE and Commissioner Cerf request dismissal of the claim in Count VI against Commissioner Cerf on the basis that there is no liability against a state official under the IDEA.  Plaintiffs contend that their claim against Commissioner

Cerf is not barred because he is "the individual charged with the responsibility to ensure that local school districts adhere to all legal requirements to school district operations." (Pls.' Br. 9.)  In this regard, Plaintiffs argue that Commissioner Cerf has an obligation to ensure that all children with disabilities are provided with a FAPE as defined by the IDEA.  (Id. at 11.)

"The IDEA is a comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities."  M.A. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 338 (3d Cir. 2003) (citing Dellmuth v. Muth, 491 U.S. 223, 225, 109 S. Ct. 2397, 105 L. Ed. 2d 181 (1989)).  Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education . . . [.]"  20 U.S.C. § 1400(d).  To effect this goal, Congress made federal funds available to assist states with providing educational services to children with disabilities.  M.A., 344 F.3d at 338.  However, states must meet a number of substantive and procedural criteria to obtain federal money.  Id.

Many of the procedural criteria "have been implemented in the laws and regulations of New Jersey."  Id.  "Both the IDEA and, in greater detail, the implementing laws of New Jersey delineate timetables for meeting various IDEA obligations."  Id.

at 339.  Relevant to the present motion is N.J.A.C. § 6A:14-2.7, which concerns due process hearings requested by parents or guardians of a disabled child when "there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action."  N.J.A.C. § 6A:14-2.7(a).  This regulation requires, <u>inter</u> <u>alia</u>, an administrative law judge hearing the due process petition to render a final decision not later than forty-five calendar days after the conclusion of a resolution period,[7] unless adjournments are granted by the administrative law judge.  N.J.A.C. § 6A:14-2.7(j).

When a plaintiff alleges a substantive violation of the IDEA in that he or she was denied a FAPE, he or she may seek a "compensatory education," meaning "appropriate educational services within the district," or tuition reimbursement for an appropriate placement in private school.  <u>C.H. v. Cape Henlopen</u>

---

[7] When a parent requests a due process hearing, the school district must conduct a resolution meeting with the parents in an effort to resolve the matter before proceeding to a due process hearing.  N.J.A.C. 6A:14-2.7(h).  This meeting should generally be held within fifteen days of a parent's request for a due process hearing.  N.J.A.C. 6A:14-2.7(h)(2).  If the parties are unable to resolve the matter within thirty days of receipt of the petition for a due process hearing, the New Jersey Office of Special Education Programs must then transmit the case to the Office of Administrative Law for a due process hearing.  N.J.A.C. 6A:14-2.7(h)(4).

Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010).  By contrast, a
plaintiff alleging a failure to comply with a procedural
requirement of the IDEA may only seek injunctive relief for
prospective compliance.  Id. (citations omitted).  The Court
notes that the failure to provide a timely due process hearing
may be a procedural violation, but it also may rise to a
substantive violation if it results in the denial of a FAPE as
required by the IDEA.  See Blackman v. Dist. of Columbia, 277 F.
Supp. 2d 71, 79 (D.D.C. 2003) ("While a slight delay in the
provision of a hearing after a request has been made or a slight
delay in rendering a decision may be an excusable procedural
infirmity in some cases, the failure to offer the parents and
their children a timely hearing for months after the expiration
of the 45-day period, as was the case here, crosses the line
from process to substance.").

       Although the parties do not seek dismissal of the claim in
Count VI for lack of standing, the Court finds that dismissal of
this count is warranted because Plaintiffs do not have standing
to obtain the relief sought in this count.  Similar to the
relief sought in Count V, Plaintiffs request in Count VI
declaratory and injunctive relief, as well as attorney's fees
and other costs.  As noted previously, to obtain injunctive
relief a plaintiff show that he is likely to suffer future
injury from the defendant's illegal conduct.  Bostrom, 969 F.

Supp. 2d at 417.  The plaintiff must demonstrate a "real or immediate threat that [he] will be wronged again -- a likelihood of substantial and immediate irreparable injury." Lyons, 461 U.S. at 111, 103 S. Ct. 1660.

Here, although Plaintiffs seek a declaration that the NJDOE committed a substantive rather than procedural violation of the IDEA, the relief requested is prospective injunctive relief and not a compensatory education.[8]  Specifically, Plaintiffs ask for an injunction requiring the NJDOE to "provide final written due process decisions in a timely manner."  (SAC 18.)  However, this is not a case where the plaintiffs never received a due process hearing, such that the Court could order a hearing to be held. See, e.g., Blackman, 277 F. Supp. 2d at 82 (where children never had due process hearing, court ordered school district to conduct due process hearing immediately).  Nor does the record contain facts from which the Court could conclude that there is a likelihood that A.S. will again be deprived of a timely final due process decision.  Plaintiffs do not allege, for example, that there is a pattern or policy of delaying final written decisions with respect to A.S., or any other student for that

---

[8] The Court makes no finding as to whether a compensatory education would be an appropriate remedy in this case.  The Court notes only that a compensatory education is the typical remedy for substantive violations of the IDEA, and prospective injunctive relief is typically awarded for procedural violations of the IDEA, as discussed supra.

matter.  As such, there is no factual basis to support the injunctive relief that Plaintiffs request in Count VI.[9]

Moreover, because Plaintiffs do not demand monetary damages other than attorney's fees and costs, which are not themselves sufficient to confer standing as discussed in Note 6 <u>supra</u>, and the injunctive relief sought by Plaintiffs is not available, Plaintiffs' request for declaratory relief would amount to nothing more than an advisory opinion regarding the wrongfulness of the NJDOE or Commissioner Cerf's past conduct.  For the same reasons expressed above with respect to Count V, the Court will not entertain a claim seeking a declaration that the NJDOE or Commissioner Cerf acted wrongfully when there is no redressable injury arising therefrom.

Plaintiffs' claim in Count VI against both Commissioner Cerf and the NJDOE will be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[9] The Court notes the allegation that the initial hearing was not held until 140 days after the petition was filed.  (SAC ¶ 14.) Had Plaintiffs filed suit sooner, before a due process hearing was held or before the ALJ rendered a final decision, then perhaps the Court could have ordered injunctive relief requiring the NJDOE to ensure that a written decision was provided in a timely manner, or requiring the ALJ to hold a due process hearing or issue a final decision.  But given the procedural posture of the matter at the time Plaintiffs filed suit, and the absence of any basis to conclude that there will be a continuing violation of law, the Court cannot enter injunctive relief of the nature sought by Plaintiffs in the SAC.

**V.**    <u>**CONCLUSION**</u>

For the reasons discussed above, Defendants NJDOE and Commissioner Cerf's motion to dismiss will be granted. Plaintiffs fail to demonstrate that they have standing to obtain the relief requested in Counts V and VI from the NJDOE and Commissioner Cerf.  These counts will be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

An Order consistent with this Opinion will be entered.


                                      s/ Noel L. Hillman
Dated: December 11, 2014         NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey