UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

A.S.,

                    Plaintiff,              Civil No. 14-147 (NLH/KMW)

v.                                          **OPINION**

HARRISON TOWNSHIP BOARD OF
EDUCATION, et al.,

                    Defendants.

_____


**APPEARANCES:**

Jamie Epstein, Esquire
107 Cherry Parke, Suite C
Cherry Hill, New Jersey 08002
*Counsel for Plaintiff*

Brett E.J. Gorman, Esquire
Parker McCay PA
9000 Midlantic Drive
Suite 300
Mt. Laurel, New Jersey 08054
*Counsel for Defendant Harrison Township Board of Education*


**HILLMAN, District Judge**

        Presently before the Court is the motion of Defendant

Harrison Township School District Board of Education

("Harrison") to dismiss Counts IV and V in Plaintiffs' Second

Amended Complaint [Doc. No. 29]. Plaintiffs filed a cross-motion

to amend and attached a Proposed Third Amended Complaint [Doc.

No. 73]. Harrison opposes Plaintiffs' motion to amend and

1

additionally seeks to dismiss Counts VI, VII, X, and XI in Plaintiffs' Proposed Third Amended Complaint. Also before the Court is Harrison's motion to consolidate [Doc. No. 107] and Plaintiffs' motion for partial summary judgment as to Counts I-III regarding the administrative record [Doc. No. 57]. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, Harrison's motion to dismiss will be granted in part and denied in part. Plaintiffs' motion to amend will be granted in part and denied in part. Harrison's motion to consolidate will be granted. Plaintiffs' motion for partial summary judgment will be denied without prejudice.

I.   <u>BACKGROUND</u>

**A. Factual Background**

The minor Plaintiff, A.S., now an eight year-old student, has numerous alleged disabilities, including autism spectrum disorder, attention deficit hyperactivity disorder, epilepsy, and hearing impairment. Prop. Third Am. Compl. ("PTAC") ¶ 4. A.S. resides with his parents and legal guardians, Plaintiffs H.S. and M.S., in the Township of Mullica Hill, New Jersey. <u>Id.</u> ¶ 5. Harrison is a "Local Educational Authority," as defined by 20 U.S.C. § 1401, responsible for ensuring compliance with certain federal mandates for school-aged students residing in the Township of Mullica Hill. <u>Id.</u> ¶ 6.

Plaintiffs allege that in August 2010 Harrison classified A.S. as a preschool child with a disability and placed him in a segregated half-day "Preschool Disability Classroom" for the 2010-2011 school year. Id. ¶ 12. For the other half of the day, A.S. attended a private preschool with non-disabled peers. Id. Plaintiffs allege that Harrison should not have segregated A.S. because he could have been educated in a regular classroom with supplementary aids and support services. Id. ¶ 13. Plaintiffs further allege that at the end of the 2010-2011 school year, Harrison erroneously declassified A.S. from special education eligibility. Id. ¶ 14.

On October 29, 2012, when A.S. was five years old, Plaintiffs filed a due process petition pursuant to the Individuals with Disabilities Education Act of 2004, 20 U.S.C. § 1400 et seq. ("IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). PTAC ¶ 15. In the petition, Plaintiffs sought several remedies, such as a finding that A.S. should be classified and provided special education; that Harrison should maintain A.S. at Cherrywood Academy (a private preschool) for the remainder of the current school year; that Harrison should provide A.S. with compensatory education for the period of time it should have known that A.S. was not receiving a free and appropriate education ("FAPE") in the least

3

restrictive environment ("LRE"); that Harrison should reimburse
Plaintiffs for tuition, transportation and related costs at
Cherrywood; and other unspecified remedies. Id. ¶ 16.

An Administrative Law Judge entered a final decision on
Plaintiffs' due process petition on October 11, 2013, which
provided:

> It is **ORDERED** that the petition of parents
> H.S. and M.S. on behalf of A.S. is **GRANTED.**
> A.S. shall be classified and provided
> special education.  The District shall
> compensate the parents and reimburse them
> the co-pays for tuition for the 2012-13
> school year in the amount of $2,460.00.  I
> also **ORDER** that the transportation expense
> of $1,321.84 for mileage reimbursement shall
> be paid to the parents by the District.
>
> Pending completion of that evaluation, A.S.
> shall be classified as other health impaired
> and shall be provided with an
> [Individualized Education Plan] and special-
> education services designed to accommodate
> his particular needs.  A 504 plan shall also
> be formulated to maximize his access to
> education in the least restrictive
> environment.

PTAC ¶ 19.  Thus, according to the October 11, 2013 Order,
Harrison was to pay Plaintiffs H.S. and M.S. a total of
$3,781.84. The Order did not specify a time period for
compliance.

On October 17, 2013, A.S. filed a petition for emergent
relief after Harrison allegedly refused to maintain A.S.'s
placement at Cherrywood. PTAC ¶ 21. On October 21, 2013, an ALJ

4

granted A.S.'s petition for emergent relief and ordered Harrison to comply with the stay-put placement at Cherrywood. Id. ¶ 22. Specifically, the ALJ found:

> . . . [T]he petitioner's request for emergent relief is **GRANTED**. It is hereby **ORDERED** that the "stay-put" placement of A.S. is in the Cherrywood Academy. . . . This decision on application for emergency relief shall remain in effect until the issuance of the decision on the merits in this matter.

PTAC ¶ 22.

On October 24, 2013, thirteen days after the October 11, 2013 Order was entered, "after numerous prior unsuccessful attempts to get Defendant Harrison to pay the ordered reimbursements," Plaintiffs complained to the New Jersey Department of Education ("NJDOE"). Id. ¶ 25. The NJDOE purportedly waited until December 4, 2013 to direct Harrison to comply with the October 11, 2013 Order. Harrison allegedly complied with the Order on December 17, 2013. Id. ¶ 26.

On January 9, 2014, Plaintiffs filed a complaint in this Court alleging violations of the IDEA, ADA, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq.

On March 17, 2014, Plaintiffs and Harrison voluntarily agreed to a settlement which disposed of all the issues between the parties for the 2013-2014 school year, except for compensatory education. PTAC ¶ 34.

Between August 5, 2014 and August 22, 2014, M.S. and Harrison exchanged emails to schedule an initial individualized education plan ("IEP")[1] meeting on August 25, 2014 to develop A.S.'s IEP for the 2014-2015 school year. PTAC ¶ 36. On August 11, 2014, Plaintiffs' attorney notified Harrison that it would be acceptable to place A.S. in an inclusive class at the Jeffrey Clark School in the East Greenwich School District for first grade – a comparable placement compliant with the October 21, 2013 stay-put order. Id. ¶¶ 38, 39.

By email dated August 22, 2014, Harrison canceled the previously scheduled IEP meeting because Harrison's attorney could not attend. Id. ¶ 41. Harrison was not able to place A.S. in Jeffrey Clark without an IEP signed by A.S.'s parents. Plaintiffs fault Harrison for the failure of the parties to conduct a timely IEP meeting. A.S.'s parents eventually signed only the cover page of an IEP prepared by Harrison. A.S.'s parents also requested that Harrison maintain A.S. at Cherrywood in the meantime. Id. ¶ 47. Harrison denied the parents' request and required A.S. to attend Harrison in a general education first grade class as an unclassified student with the option of

---

[1] "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive." Melissa S. v. Sch. Dist. of Pittsburgh, 183 F. App'x 184, 186-87 (3d Cir. 2006) (internal citations and quotations omitted).

receiving 10 hours of home instruction per week. PTAC ¶¶ 48, 49.
Thus, A.S. alleges from September 4-19, 2014, "Harrison barred
A.S. from receiving a comparable stay-put placement and
program." Id. ¶ 50. Harrison informed Plaintiffs that during
this time it was working to place A.S. in the Jeffrey Clark
School. Id. ¶ 51. Plaintiffs allege that on September 12, 2014,
Harrison emailed Beth Godfrey, Special Education Supervisor of
East Greenwich School District, and "for no apparent reason,"
apprised her that A.S. and Harrison were involved in litigation.
PTAC ¶ 52. Thereafter, Greenwich Township denied A.S. enrollment
at the Jeffrey Clark School, stating that it could not implement
the IEP provided by Harrison. Id. ¶ 56.

On September 9, 2014, A.S. and his parents filed a Request
for Emergent Relief, which was heard on September 18, 2014, and
a Petition for Due Process with the New Jersey Department of
Special Education, which was transferred to the Office of
Administrative Law on October 9, 2014.[2] Between September 22,
2014 and October 31, 2014, A.S.'s parents placed A.S. in

---

[2] In the Petition for Due Process, A.S. and his parents requested
$3,600 in compensatory education for the period of September 4-
19, 2014 when A.S. was "locked out of school," tuition
reimbursement for the 28 days A.S. attended Cherrywood
($8,234.50 owed to Cherrywood and $435.00 to A.S.'s parents for
insurance copays), reimbursement for mileage to Cherrywood,
reimbursement for time spent transporting A.S. to Cherrywood,
and a permanent injunction barring Harrison from violating the
stay-put order. PTAC ¶ 59.

Cherrywood. Id. ¶ 57. On October 18, 2014, an ALJ issued an
order granting emergent relief, stating:

> I **CONCLUDE** that the District must immediately
> ensure that A.S. is enrolled at the Clark School
> in an inclusionary program that is consistent
> with the program set forth in C-1, which is
> A.S.'s "stay-put" placement for the remainder of
> the present due process petition. It is hereby
> **ORDERED** that the respondent district within
> twenty-four hours of receipt of this Order
> forward to the Clark School a copy of this
> Order[.]

PTAC ¶ 55.

Following the hearing on the September 9, 2014 Petition for
Due Process an ALJ ruled that A.S.'s placement at Cherrywood for
September 22 – October 31, 2014 was appropriate and that A.S.'s
parents were entitled to limited tuition and transportation
reimbursement. Id. ¶ 60.

**B. The Proposed Third Amended Complaint**

Count IV of the Proposed Third Amended Complaint asserts
claims against Harrison under the IDEA and NJLAD alleging that
Harrison "discriminated against A.S. based on their custom or
practice of segregating disabled preschoolers, like A.S.,
regardless of whether they, like A.S., could be educated with
non-disabled peers" during the 2010-2011 school year. Id. ¶ 44.[3]

---

[3] Count Four in the Second Amended Complaint contains the same
causes of action except that the Proposed Third Amended
Complaint brings claims under the ADA in addition to the NJLAD.

Count V asserts claims under the IDEA, Rehabilitation Act, ADA and NJLAD based on Harrison's failure to comply with the ALJ orders.[4]

Count VI asserts new ADA and NJLAD claims against Harrison for the 2014-2015 school year. Plaintiffs allege Harrison denied A.S. educational benefits because of his disabilities by denying A.S. formal notice of his IEP meeting, denying A.S. an IEP meeting, creating a unilateral IEP, failing to maintain A.S.'s stay-put placement, and failing to ensure A.S. would be provided a FAPE in the LRE for the 2014-2015 school year. PTAC ¶ 117.

Count VII alleges that in retaliation for Plaintiffs' litigation, Harrison and Joan Ruberton, Supervisor of Student Services of Harrison Township, informed East Greenwich of the litigation in order to encourage East Greenwich to deny A.S.'s placement at the Jeffrey Clark School. PTAC ¶ 132. Plaintiffs further allege Harrison and Ruberton failed to provide A.S. an IEP meeting in order to impose its unilateral education plan rather than ensure A.S. had a placement compliant with the ALJ orders. Id. ¶ 127.

---

[4] Count Five in the Proposed Third Amended Complaint contains the same causes of action except that the Second Amended Complaint asserted claims against the New Jersey Department of Education and Christopher Cerf, New Jersey Commissioner of Education, in addition to Harrison.

Counts VIII asserts new ADA and NJLAD claims against East Greenwich School District for denying A.S. admittance into the Jeffrey Clark School based on his disabilities. PTAC ¶ 139. Count IX asserts new ADA, Section 504, and NJLAD claims against East Greenwich and Beth Godfrey, Special Education Supervisor of East Greenwich School District, for denying A.S. placement at the Jeffrey Clark School based on their knowledge of the Harrison litigation. PTAC ¶ 142.

Count X asserts a new claim against Ruberton for tortiously interfering with A.S.'s placement at the Jeffrey Clark School. PTAC ¶ 148. Count XI is a new claim against Ruberton and Godfrey for conspiring to interfere with A.S.'s placement at the Jeffrey Clark School. PTAC ¶ 160.

## II.  JURISDICTION

The Court exercises subject matter jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367.

## III. STANDARDS FOR DISMISSAL AND AMENDING THE PLEADINGS

### A. Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted

10

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the claim as true and view them in the light most favorable to the claimant. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); MCI Telecommunications Corp. v. Graphnet, Inc., 881 F. Supp. 126, 128 (D.N.J. 1995). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for

11

the 'no set of facts' standard that applied to federal

complaints before <u>Twombly</u>.").

Following the <u>Twombly</u>/<u>Iqbal</u> standard, the Third Circuit has

outlined a three-part analysis in reviewing a complaint under

Rule 12(b)(6). First, the Court must take note of the elements

needed for plaintiff to state a claim. <u>Santiago v. Warminster</u>

<u>Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010). Second, the factual and

legal elements of a claim should be separated; a district court

must accept all of the complaint's well-pleaded facts as true,

but may disregard any legal conclusions. <u>Id.</u>; <u>Fowler</u>, 578 F.3d

at 210 (citing <u>Iqbal</u>, 556 U.S. at 678). Third, a district court

must then determine whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a plausible claim

for relief. <u>Id.</u> A complaint must do more than allege the

plaintiff's entitlement to relief. <u>Fowler</u>, 578 F.3d at 210; <u>see</u>

<u>also Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234 (3d Cir.

2008) (stating that the "Supreme Court's <u>Twombly</u> formulation of

the pleading standard can be summed up thus: stating . . . a

claim requires a complaint with enough factual matter (taken as

true) to suggest the required element. This does not impose a

probability requirement at the pleading stage, but instead

simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element")

(internal quotations and citations omitted). A court need not

12

credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Standard for Motion to Amend Complaint**

Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman

v. Davis, 371 U.S. 178 (1962)). Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss. Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988). Harrison does not contend that Plaintiffs' amendments would cause undue delay, were made in bad faith, are based on a dilatory motive, or are repetitive of previous denials. Thus, the Court only considers whether Plaintiffs' amendments are futile, which is likewise assessed under a Fed. R. Civ. P. 12(b)(6) standard. Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).

## IV.  ANALYSIS

### A. Count IV of the Proposed Third Amended Complaint – ADA and NJLAD Claims against Harrison

To prevail on a discrimination claim under the ADA a plaintiff must demonstrate that s/he: (1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of his or her disability. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). "The NJLAD provides protections to disabled persons analogous to the ADA's protections" thus New Jersey courts "apply the standards developed under the ADA when analyzing NJLAD claims." Mucci v.

14

Rutgers, No. 08-4806, 2011 WL 831967, at *21 (D.N.J. Mar. 3, 2011); Lawrence v. Nat'l Westminster Bank New Jersey, 98 F.3d 61, 70 (3d Cir. 1996) (explaining that the ADA and NJLAD have been held to be governed by the same standards).

In the Proposed Third Amended Complaint Plaintiffs have sufficiently pled a prima facie case for discrimination under the ADA and NJLAD. First, Plaintiffs allege A.S. is a disabled child. Second, Plaintiffs allege during the 2010-2011 school year A.S. should have been educated in a regular classroom, with supplementary aids and support services in the least restrictive environment, but was instead segregated. PTAC ¶¶ 12-13. Third, Plaintiffs allege A.S. was segregated from non-disabled students because of his disability.

Harrison argues Count IV must be dismissed as futile because: (1) New Jersey school districts are only required to develop preschools for disabled students; (2) Plaintiffs' cannot prove a denial of a FAPE occurred; and (3) the relief Plaintiffs seek contradicts their claims under the IDEA. The Court will address Harrison's arguments in turn.

New Jersey schools are required to provide a free, appropriate public education ("FAPE") to students with disabilities no later than the student's third birthday, which includes preschool age students. N.J.A.C. 6A:14-1.1(b)(2). Students with disabilities are to be educated in the least

15

restrictive environment, thus, to the maximum extent
appropriate, a student with a disability must be educated with
children who are not disabled. N.J.A.C. 6A:14-4.2(a)(1); 20
U.S.C. § 1412(a)(5)(A).

The Third Circuit adopted a two-part test for determining
whether a school is complying with least restrictive environment
requirement. First, the court must determine whether education
in the regular classroom, with supplementary aids and support
services, can be achieved satisfactorily. Second, the court must
evaluate whether the school has mainstreamed the child to the
maximum extent appropriate. Oberti by Oberti v. Bd. of Educ. of
Borough of Clementon Sch. Dist., 995 F.2d 1204, 1207 (3d Cir.
1993). The mainstreaming requirements apply to preschool
children. T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 579
(3d Cir. 2000). The school bears the burden of proving
compliance. Id.

Plaintiffs' Proposed Third Amended Complaint alleges that
during the 2010-2011 school year A.S. was placed in a segregated
half-day "Preschool Disability Classroom." PTAC ¶ 12. Plaintiffs
allege this was not the least restrictive environment since A.S.
could have been educated with non-disabled preschoolers. PTAC ¶
93.

Harrison argues that although the IDEA requires school
districts to provide a FAPE to disabled preschool age students,

16

because school districts are not required to establish preschools for non-disabled students, a disabled preschool student may be provided educational services without direct inclusion with non-disabled students. At this stage, the Court rejects Harrison's argument. N.J.S.A. 18A:44-1 provides that if a school district establishes a preschool it shall admit any child under the age at which children are admitted to other schools or classes in the district, not just disabled children. Thus, according to Plaintiffs, once Harrison created a preschool it was required to admit non-disabled students and should not have segregated disabled students in one classroom. Therefore, A.S. has sufficiently stated a claim that A.S. was qualified to be educated with non-disabled preschoolers.

Harrison additionally argues that if Plaintiffs cannot prove a denial of a FAPE occurred, their NJLAD claim fails as a matter of law. However, at this stage, it is only relevant that the pleading is sufficient. Plaintiffs need not prove their allegations at this time.

Lastly, Harrison argues that A.S.'s allegations under NJLAD are at odds with their position under IDEA wherein they advocated for a placement at Cherrywood which purportedly segregates disabled children. However, Plaintiffs allege that in Cherrywood, A.S. was in an inclusive non-segregated classroom

17

and thus the relief sought is not inconsistent. At most,
Harrison's arguments raise only factual disputes.

Therefore, the Court finds that Plaintiffs have
sufficiently stated a claim in their Proposed Third Amended
Complaint against Harrison pursuant to the ADA and NJLAD.
Accordingly, as to Count IV, Harrison's motion to dismiss is
denied. Plaintiffs' motion to amend is granted.

**B. Count V of the Proposed Third Amended Complaint – IDEA,
    Section 504 of the Rehabilitation Act, ADA and NJLAD Claims
    Against Harrison for Failure to Implement the ALJ Orders**

In Count V of the Proposed Third Amended Complaint
Plaintiffs allege Harrison failed to comply with the ALJ orders.
Plaintiffs allege these failures constitute substantive
violations of A.S. right to a FAPE. The FAPE requirement means
that a disabled child is provided services which offer a
meaningful educational benefit. T.R. v. Kingwood Twp. Bd. of
Educ., 205 F.3d 572, 577 (3d Cir. 2000). "While the IDEA grants
a positive right to a 'free appropriate public education,'
[S]ection 504 of the Rehabilitation Act of 1973 essentially
prohibits federally funded entities from denying a free
appropriate public education on the basis of disability."
Melissa S. v. Sch. Dist. of Pittsburgh, 183 F. App'x 184, 189
(3d Cir. 2006). The Third Circuit has found there are "few

differences, if any" between "IDEA's affirmative duty and §
504's negative prohibition." Id.[5]

A procedural violation of the IDEA is not a *per se* denial
of a FAPE unless the violation causes substantive harm to the
child or his or her parents. C.H. v. Cape Henlopen Sch. Dist.,
606 F.3d 59, 66 (3d Cir. 2010). A substantive harm occurs only
if the procedural inadequacies: (1) impeded the child's right to
a FAPE; (2) significantly impeded the parent's opportunity to
participate in the decision-making process regarding the
provision of a FAPE to the parent's child; or (3) caused a
deprivation of the educational benefit. Id. at 67.

As stated above, to prevail on a discrimination claim under
the ADA or NJLAD, a plaintiff must demonstrate that s/he: (1)
has a disability; (2) was otherwise qualified to participate in
a school program; and (3) was denied the benefits of the program
or was otherwise subject to discrimination because of his or her
disability. Chambers, 587 F.3d at 189.

---

[5] The ADA and Section 504 of the Rehabilitation Act, however,
have different causation elements. "The RA allows a plaintiff to
recover if he or she were deprived of an opportunity to
participate in a program solely on the basis of disability,
while the ADA covers discrimination on the basis of disability,
even if there is another cause as well." CG v. Pennsylvania
Dep't of Educ., 734 F.3d 229, 235-36 (3d Cir. 2013)

As to their IDEA and Rehabilitation Act claims for failure to implement the ALJ Orders, Plaintiffs have sufficiently alleged Harrison impeded A.S.'s right to a FAPE and denied A.S. educational benefits. As to their ADA and NJLAD claims, Plaintiffs have sufficiently alleged that A.S. was qualified to remain enrolled in his stay-put placement but was denied that benefit because Harrison failed to comply with the ALJ orders and discriminated against A.S. because of his disability. For example, Plaintiffs allege in September 2014 Harrison denied the parents' request for the Cherrywood placement and required A.S. to attend Harrison in a general education first grade class as an unclassified student, which was not compliant with the ALJ orders. PTAC ¶¶ 48, 49.

Harrison argues Plaintiffs lack standing to raise a claim under Count V. In their Second Amended Complaint, Plaintiffs alleged that the New Jersey Department of Education and Christopher Cerf, New Jersey Commissioner of Education, failed to comply with the October 11, 2014 compensatory education order in a timely manner and were capable of repeating their conduct. Plaintiffs requested injunctive and declaratory relief. The Court previously found that as to injunctive relief, Plaintiffs did not allege there may be future ALJ orders that will be violated. See Dec. 11, 2014 Op. at 13. Thus, the Court found that Plaintiffs did not meet their burden of demonstrating that

20

they were under threat of suffering an "injury in fact" that was concrete, particularized, and actual or imminent. Id. at 14. As to declaratory relief, the Court determined that Plaintiffs sought an improper advisory opinion regarding the wrongfulness of the NJDOE's past conduct. Id. at 17. Accordingly, the Court found Plaintiffs lacked standing to assert Count V. Id.

Plaintiffs' Proposed Third Amended Complaint, however, cures the noted standing deficiencies. Plaintiffs allege Harrison has continuously failed to comply with ALJ orders. PTAC ¶ 113. For example, Plaintiffs allege that in September 2014, "Harrison barred A.S. from receiving a comparable stay-put placement and program." Id. ¶ 50. Further, in their September 9, 2014 Petition for Due Process, Plaintiffs stated that Harrison violated the stay-put order six times. Id. ¶ 59. Here, Plaintiffs sufficiently allege that Harrison is capable of repeating its conduct. Plaintiffs have met their burden of demonstrating that they are under threat of suffering an injury in fact that is concrete, particularized, and actual or imminent. Thus, the Court rejects Harrison's argument that Count V must be dismissed because Plaintiffs lack standing.

Harrison additionally argues Count V must be dismissed because: (1) Plaintiffs acknowledge Harrison complied with the October 11, 2013 ALJ order in a timely fashion; (2) Plaintiffs failed to file an appropriate application to enforce the ALJ's

order; and (3) Harrison was at all times under the supervision of the NJDOE and could not have violated Plaintiffs' rights.

Harrison's first argument is rejected. Plaintiffs have clearly contested that Harrison complied with the October 11, 2013 ALJ order in a timely fashion. See PTAC ¶ 25.

Harrison's second argument is also rejected. Harrison argues that Plaintiffs should have sought enforcement from a court rather than requesting enforcement from the New Jersey Office of Special Education. Harrison argues Plaintiffs' actions were procedurally deficient because the NJDOE only has jurisdiction to implement an order with respect to student programs or services and cannot award monetary relief.

As an initial matter, Plaintiffs do not allege they sought monetary damages for the enforcement of the October 11, 2013 Order. Instead they sought tuition and transportation compensation. Reimbursement does not constitute damages under the IDEA. Bucks Cnty. Dep't of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 68 (3d Cir. 2004). Further, the New Jersey Administrative Code makes clear that parents may seek a court order for enforcement of a final ALJ order, but are not required to. See L.J. ex rel. V.J. v. Audubon Bd. of Educ., No. 06-5350, 2006 WL 3825135, at *2 (D.N.J. Dec. 22, 2006) ("The New Jersey Administrative Code, however, indicates that a parent enjoys the option of seeking enforcement in a court of competent

22

jurisdiction or with the state Director of the Office of Special Education Programs, where N.J.A.C. 6A:14-2.7(t) provides in part: 'If either party fails to comply with any provision of a final decision in a due process hearing, either party may seek enforcement of the decision in a court of appropriate jurisdiction.'").

The Court also rejects Harrison third argument that it did not violate Plaintiffs' rights because it was at all times under the supervision of the NJDOE. In fact, Harrison had a duty to implement the October 11, 2013 ALJ Order pursuant to N.J. Admin. Code § 6A:14-2.7(l) ("The decision of the administrative law judge is final, binding on both parties and to be implemented without undue delay unless stayed").

Therefore, the Court finds that Plaintiffs have sufficiently stated a claim in their Proposed Third Amended Complaint against Harrison pursuant to the IDEA, Section 504 of Rehabilitation Act, the ADA and NJLAD. Accordingly, as to Count V, Harrison's motion to dismiss is denied. Plaintiffs' motion to amend is granted.

### C. Count VI of the Proposed Third Amended Complaint – ADA and NJLAD Claims Against Harrison for the 2014-2015 School Year

Count VI asserts claims against Harrison under the ADA and NJLAD. Plaintiffs' allege Harrison discriminated against A.S. by crafting a unilateral IEP and denying A.S. his right to a FAPE

in the LRE during the 2014-2015 school year. PTAC ¶ 117. Plaintiffs have sufficiently pled a prima facie case of discrimination under the ADA or NJLAD. Plaintiffs allege A.S. was qualified to be placed in his ALJ-ordered placement but was denied his right to a FAPE during the 2014-2015 school year due to his disability.

Harrison argues Count VI should be dismissed as futile because it relates to facts "already adjudicated and rejected by the ALJ." Opp. Br. at 26 [Doc. No. 101]. Specifically, the ALJ noted that with regard to the denial of the IEP meeting, both parties were at fault for failing to schedule the IEP meeting at the start of the 2014-2015 school year. See Opp. Br. at 27 (citing Br. in Support of Mot. to Am. [Doc. No. 71-4, p. 24]). Further, Harrison contests that A.S. was ever "locked out" of school and was at all times welcome to attend Harrison as a general education student. Opp. Br. at 30.

Plaintiffs in turn argue that the ALJ did not determine explicitly whether A.S. was a denied a FAPE for the beginning of the 2014-2015 school year. Further, Plaintiffs allege A.S. was "locked-out" of an appropriate placement at the start of the 2014-2015 school year.

It is clear that the parties have several factual disputes. However, at this stage, Plaintiffs need only plead plausible facts to state a claim, which they have done. Accordingly, as to

24

Count VI, Harrison's motion to dismiss is denied. Plaintiffs'
motion to amend is granted.

### D. Count VII of the Proposed Third Amended Complaint – ADA, NJLAD, and Section 504 of the Rehabilitation Act Retaliation Claims Against Harrison and Ruberton

To establish a retaliation claim under the ADA, NJLAD, or
Section 504 of the Rehabilitation Act a plaintiff must show: (1)
s/he was engaged in protected activity; (2) the alleged
retaliator knew that plaintiff was involved in protected
activity; (3) an adverse decision or course of action was taken
against plaintiff; and (4) a causal connection exists between
the protected activity and the adverse action." P.N. v. Greco,
282 F. Supp. 2d 221, 242 (D.N.J. 2003).

Plaintiffs allege Harrison and Ruberton retaliated against
Plaintiffs by denying A.S. an IEP meeting, an appropriate IEP,
and a FAPE in the LRE. PTAC ¶ 122. Plaintiffs have alleged they
were engaged in a protected activity in litigating their claims,
Harrison and Ruberton were aware of the litigation, Harrison and
Ruberton informed East Greenwich of the litigation in order to
"entice" East Greenwich into denying A.S.'s placement (and took
other adverse actions), and that there is a causal connection
between the litigation and Harrison's adverse actions.

Harrison argues Plaintiffs' retaliation claims must be
dismissed because Plaintiffs fail to prove an adverse action
taken against them. However, Harrison's arguments are

appropriate on a motion for summary judgment, not on a motion to dismiss. Plaintiffs allege that Ruberton informed East Greenwich of the ongoing litigation, "essentially enticing" East Greenwich to deny A.S. placement at the Jeffrey Clark School. Further, Plaintiffs allege Harrison engaged in other retaliatory acts such as failing to adhere to the stay-put order and "coerc[ing]" A.S.'s parents to sign a unilateral IEP. PTAC ¶ 127. This is sufficient to support the allegation that Harrison and Ruberton took an adverse action. See P.N. v. Greco, 282 F. Supp. 2d 221, 242 (D.N.J. 2003) (finding delay in scheduling an IEP meeting and failure to provide an adequate interim education was sufficient evidence to allege board of education took an adverse action).

Therefore, the Court finds Plaintiffs have sufficiently pled a claim for retaliation under the ADA, NJLAD, and Section 504 of the Rehabilitation Act. Accordingly, Harrison's motion to dismiss Count VII is denied. Plaintiffs' motion to amend is granted.

### E. Counts X and XI of the Proposed Third Amended Complaint – Tortious Interference and Conspiracy Claims Against Ruberton and Godfrey

A claim for tortious interference with a contract and/or prospective business relationship requires a plaintiff to prove: (1) he had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the

harm was inflicted intentionally and without justification or
excuse; (3) the interference caused the loss of the prospective
gain or there was a reasonable probability that the plaintiff
would have obtained the anticipated economic benefit, and (4)
the injury caused the plaintiff damage. <u>Singer v. Beach Trading
Co.</u>, 379 N.J. Super. 63, 81 (App. Div. 2005). "A complaint based
on tortious interference must allege facts that show some
protectable right – a prospective economic or contractual
relationship. Although the right need not equate with that found
in an enforceable contract, there must be allegations of fact
giving rise to some 'reasonable expectation of economic
advantage.'" <u>Printing Mart-Morristown v. Sharp Electronics
Corp.</u>, 116 N.J. 739, 751 (1989). To assert a claim for civil
conspiracy, the plaintiff must assert a separate underlying tort
as a predicate for liability. <u>In re Orthopedic Bone Screw
Products Liab. Litig.</u>, 193 F.3d 781, 789 (3d Cir. 1999).

Count X alleges that Ruberton unlawfully interfered with
A.S.'s ability to be placed at the Jeffrey Clark School which
denied A.S. educational and economic benefits. In Count XI
Plaintiffs allege Ruberton and Godfrey conspired to prevent A.S.
from attending the Jeffrey Clark School and "both aided in the
tor[ious] interference of A.S.'s education and economic benefit
and advantage." PTAC ¶ 162. Harrison argues these claims should
be dismissed because the tort of unlawful tortious interference

requires some kind of "economic advantage" which does not equate
to an educational advantage when the tort is committed by a
school administrator against a student. The Court agrees with
Harrison on this point. Plaintiffs have cited no authority for
extending the state tort claim of tortious interference to
interferences with an educational opportunity.[6]

Harrison argues that the Court should permit this new claim
and notes that courts within the Third Circuit have sometimes
equated the relationship between a school administrator and
student to an employer/employee relationship. However, the Court
need not reach this issue because Plaintiffs have not plausibly
pled facts to show that A.S. was denied an economic advantage,
which is a required element of a tortious interference claim.
The Court agrees with Harrison that "Plaintiffs have attempted
to expand the parameters of this recognized tort cause of action
by suggesting that interference with a 'benefit' such as
education, without a showing of economic loss, is sufficient in
itself to establish liability." Thus, Count X does not plead a

---

[6] The Court has uncovered one case in which the parties similarly
asked a district court to recognize the tort of "intentional
interference with an educational opportunity" as Plaintiffs have
asked the Court to do in this case. The court found that this
new tort did not exist and dismissed the claim. O'Hayre v. Bd.
of Educ. for Jefferson Cnty. Sch. Dist. R-1, 109 F. Supp. 2d
1284, 1297-98 (D. Colo. 2000).

viable cause of action and must be dismissed. Further, without a separate underlying tort as a predicate for liability, Plaintiffs' conspiracy claim under Count XI must also be dismissed.

### F. Motion to Consolidate

Whether a case should be consolidated is at the discretion of the trial court and should be permitted where the consolidation of separate actions presenting common questions of law or fact will promote convenience and economy in judicial administration. In re TMI Litigation, 193 F.3d 613, 724 (3d Cir. 1999) ("The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.") (internal citation and quotation omitted).

Harrison moves to consolidate this case with Harrison Twp. Sch. Dist. Bd. of Ed. v. H.S., et al., No. 15-2404 (RMB/JS) pursuant to Fed. R. Civ. P. 42 and L. Civ. R. 42.1. Plaintiffs consent to consolidation. [Doc. No. 108].

The Court finds that these two actions present common questions of law and fact. Further, consolidating these cases will avoid duplication of effort, and help prevent conflicting outcomes involving similar legal and factual issues. Accordingly, the Court will consolidate the actions.

**G. A.S.'s Motion for Partial Summary Judgment**

On June 3, 2015, Harrison notified the Court that both parties have appealed the January 7, 2015 Order from the Office of Administrative Law, which will require cross-motions for summary judgment. Thus, Harrison requests that the Court permit supplemental briefing before the motion for partial summary is decided. Plaintiffs have not opposed Harrison's letter request.

Accordingly, the Court will deny without prejudice A.S.'s first motion for partial summary judgment. Plaintiffs may refile their motion for partial summary judgment to include any issues related to the January 7, 2015 Order from the Office of Administrative Law by October 23, 2015. The deadline for opposition papers will be November 2, 2015 and the deadline for reply papers will be November 9, 2015.


**V.   CONCLUSION**

For the reasons discussed above, Harrison's motion to dismiss will be granted in part and denied in part. Plaintiffs' motion to amend will be granted in part and denied in part. Harrison's motion to consolidate will be granted. Plaintiffs'

motion for partial summary judgment will be denied without

prejudice.

An Order consistent with this Opinion will be entered.


                                          s/ Noel L. Hillman
Dated: September 29, 2015          NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

31