```
                        UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| A.S., a minor, individually and by his parents H.S. and M.S.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HARRISON TOWNSHIP BOARD OF EDUCATION and EAST GREENWICH SCHOOL DISTRICT,<br><br>    Defendants. | HONORABLE NOEL L. HILLMAN<br><br>CIVIL ACTION NO. 14-147<br>      (NLH/KMW)<br><br>**OPINION** |

**APPEARANCES:**

JAMIE EPSTEIN, ESQ.
107 Cherry Parke, Suite C
Cherry Hill, New Jersey 08002
       Counsel for Plaintiff

PARKER McCAY, P.A.
By: Brett Gorman, Esq.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
       Counsel for Defendant Harrison Township Board of Education

COOPER LEVENSON, P.A.
By: William S. Donio, Esq.
1125 Atlantic Avenue, Third Floor
Atlantic City, New Jersey 08401
       Counsel for Defendant East Greenwich School District


**HILLMAN**, United States District Judge:

Presently before the Court is Plaintiffs' unopposed Motion for Approval of Settlement in this IDEA[1] case. The Court held a "friendly" hearing on February 8, 2017, and March 20, 2017.[2] For the reasons stated below, the Court will approve the settlement, but does so noting its serious concerns regarding the billing practices of Plaintiffs' counsel, Jamie Epstein, Esq. Disappointingly, the undersigned must now join an ever-growing chorus of judicial colleagues who have found Mr. Epstein's billing and recordkeeping practices inadequate and unprofessional. *See, e.g., M.G. v. Eastern Regional High School*, 386 F. App'x 186, 189-90 (3d Cir. 2010)("We agree that the fee petition submitted by Epstein was seriously deficient. . . ."), and the authorities cited herein.

**I.**

Plaintiff A.S. is presently nine years old. His disabilities include autism spectrum disorder, attention deficit hyperactivity disorder, epilepsy and hearing impairment. While this federal action was instituted in 2014, this case began at the state

---

[1] Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1491.

[2] A "friendly" hearing is a proceeding pursuant to N.J. Ct. R. 4:44-3 wherein the court reviews a settlement of a minor's claims. *See Impink v. Reynes,* 396 N.J. Super. 553 (App. Div. 2007). It is unclear whether a friendly hearing is required in this federal court case which asserts causes of action under both federal and New Jersey law. The Court need not answer that question in this case however. Plaintiff requested a friendly hearing and Defendants did not object; indeed, Defendants appeared for, and participated in, the hearing.

administrative level in 2012.  That is to say that A.S.'s parents have been involved in formal adversarial litigation with their child's school district for approximately half of A.S.'s life.  The Court has no doubt that the proposed settlement between Plaintiffs and Defendant Harrison Township School Board, upon approval, will bring some much needed peace of mind to Plaintiffs and allow the parties to focus on the education of the child unburdened by the stress and uncertainly of the adversarial process.

The specific dollar figures of the settlement are filed under temporary seal and are subject to a contested motion to seal.  Accordingly, the Court will not, at this time, in this publicly-accessible opinion, discuss the specifics of the minor's settlement.  Moreover, those specific numbers are not directly relevant to the instant discussion, as the Court's concerns about the settlement relate only to the portion that will be paid to Mr. Epstein.

**II.**

When a settlement involves resolution of minors' claims, courts in New Jersey review the settlement to "determine whether [it] is reasonable as to its amount and terms." N.J. Ct. R. 4:44-3.  After review, the Court may accept the settlement, reject the settlement, or suggest different terms. *Impink v. Reynes*, 396 N.J. Super. 553, 562 (App. Div. 2007).  The Court may not re-write the settlement by ordering different terms absent the parties' consent. *Id.* at 564.

## III.

The settlement agreement between Plaintiffs and Harrison Township provides that Mr. Epstein's fees will be paid out of the total settlement lump sum payment. As such, Defendant Harrison Township does not formally object to Mr. Epstein's fees; the township has agreed to pay what it has agreed to pay. While the agreement specifies three categories of compensation, one of which is Mr. Epstein's fee, how the settlement amount is divided between Plaintiffs and Plaintiffs' counsel, or whether the basis for Mr. Epstein's requested fee is properly documented, is apparently not the township's concern. That is to say they have not provided the Court, beyond the agreement itself, with specific arguments as to the logic applied or factors considered in the apportionment of the lump sum amount or the propriety of the overall legal fee.

However, such matters are the Court's concern, as the Court must review not only the amount, but the terms of a settlement that implicates the rights of a minor and provides a remedy to that same child.[3] Since some portion of the settlement involves payments in trust for the minor child, at least in theory, the settlement at

---

[3] The Court notes that the settlement resolves the remaining claims in this matter and also addresses the issue of Mr. Epstein's overall fee. Although subject to possible appeal and review absent a final settlement, the plaintiff child and his parents have previously received substantial relief from this Court and the administrative process through the efforts of Mr. Epstein. Apart from the not insubstantial issue of the ethics of proper attorney billing and recordkeeping, the question is less whether Mr. Epstein is entitled to a fee and more what the fee should be.

issue is structured in such a way that every dollar Mr. Epstein recovers in fees is one less dollar that will be deposited into a trust account for A.S.  For this reason alone, the Court must carefully consider whether Mr. Epstein's fees are fair and reasonable, which of course, requires a careful inspection of Mr. Epstein's billing records filed in support of the instant motion.

Problematically, even a cursory inspection of Mr. Epstein's billing records reveals glaring deficiencies.  Most obviously, Mr. Epstein billed years' worth of emails in single entries: "8/31/12 – 10/14/13 DRAFT/REVIEW 468 EMAILS, 46.8 [hours]"; "3/14 – 2/15 EMAILS; OAL4 AND DISTRICT COURT, 79.1 [hours]"; "10/13 – 3/14 EMAILS; DISTRICT COURT 23.1 [hours]."  (Docket Entry 182-2[4])

Not only do these entries represent impermissible block-billing, they also suggest double-billing in that the entries overlap for two weeks during the month of October 2013, and the entire month of March 2014.  They also suggest overbilling in two independent respects: (a) every email is billed at the attorney rate (as opposed to a clerical or paralegal rate), when it is highly implausible that every email identified required legal training to address[5], and (b) every email is asserted to have taken 6 minutes (0.1 hours) to read or draft.

---

[4]   This document was not filed under seal.  The Court expresses no opinion whether it should, or should not, be under seal.

[5]   Paragraph 11 of Mr. Epstein's "Affidavit of Services" "affirms" that "I did not have any paraprofessionals work on this case,

5

Mr. Epstein has been admonished several other times about these specific billing practices. In 2006, Judge (now Chief Judge) Simandle stated,

> [c]ounsel must perform such routine tasks more efficiently or delegate such work to either a junior lawyer, paralegal or other member of Mr. Epstein's support staff. . . .
> Other entries cause the Court to question why Mr. Epstein failed to delegate certain work to his support staff. For example, on August 22, 2001 Mr. Epstein recorded 1.2 hours to review three certificates of service and file return of service with this Court. This task could have (and should have) been performed by a paralegal or capable legal assistant, or, if actually done by Mr. Epstein personally, these should have been billed at a much lower rate or absorbed as routine office overhead.

*Deptford Twp. Sch. Dist. v. H.B.*, 2006 U.S. Dist. LEXIS 92456, *17-*19 (D.N.J. Dec. 21, 2006).

---

however, if a task I performed could have been performed by a paralegal it was billed at $150 per hour *but there were none*." (Docket #182-5)(emphasis added). This statement, "made under penalty of perjury," id., strains credulity. It seems impossible that no tasks over the course of a 4+ years-long litigation could have, and should have, been performed by a paralegal or other clerical staff. The Court further notes that Mr. Epstein appears to have made a very similar misstatement in *J.L. v. Harrison Township*, 2016 U.S. Dist. LEXIS 110478, *60 (D.N.J. Aug. 19, 2016)("Mr. Epstein affirms in his Affidavit of Services that he did not have any paraprofessionals work on the case, but that tasks he performed 'which could have been performed by a paralegal were billed at $150 per hour.' Affidavit of Services ¶ 25 [Docket No. 83-2]. Yet, the Court does not find even one entry where Mr. Epstein billed at $150 per hour although he billed for many clerical tasks.").

Mr. Epstein has been reminded before of his Rule 11 obligations to the Court. *See M.G.*, 2009 U.S. Dist. LEXIS 98631 at *32; *J.L.*, 2016 U.S. Dist. LEXIS 110478 at *80, n.36; *see generally* Fed. R. Civ. P. 11(b)(3)("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information and belief . . . the factual contentions have evidentiary support."). Mr. Epstein's further reflection in this regard is clearly warranted.

In 2007, Magistrate Judge Schneider, citing Judge Simandle's opinion in *Deptford*, wrote, "the Court rules this work should have been done by plaintiff's administrative employee." *J.N. v. Mt. Ephraim Board of Education*, 2007 U.S. Dist. LEXIS 94067, *14 (D.N.J. Dec. 21, 2007).

Again in 2009, Judge Simandle criticized Mr. Epstein's "billings for clerical tasks" particularly as they pertained to "certain email-related activities" for which Mr. Epstein billed 0.1 hours of work. Judge Simandle observed, "not only would these tasks normally consume a matter of seconds, but they would ordinarily be performed by secretarial or non-legal staff, not [at] a[n] . . . attorney [rate]." *L.J. v. Audubon Board of Education*, 2009 U.S. Dist. LEXIS 31473, *44-46 (D.N.J. April 13, 2009).

Later in 2009, Judge Kugler observed that, as to "billing for clerical tasks," "Mr. Epstein did not take *L.J.*'s clear admonishment" that clerical tasks cannot be billed at an attorney rate and "that billing for certain email related activities is inappropriate." *M.G. v. Eastern Regional High School District*, 2009 U.S. Dist. LEXIS 98631, *29-31 (D.N.J. Oct. 21, 2009).

More recently, in 2015, Judge Kugler again observed that Mr. Epstein inappropriately engaged in "multi-day block billing", and "inadequately documented the hours he billed for emails" when "Mr. Epstein billed 29.5 hours for drafting and reviewing 590 emails from May 1, 2012 to October 22, 2013." *C.G. & R.G. v. Winslow Township*

7

*Board of Education*, 2015 U.S. Dist. LEXIS 161281, *9, *13-15 (D.N.J. Dec. 2, 2015).

The Court called to Mr. Epstein's attention these deficiencies and prior precedent at the first friendly hearing on February 8th, and granted Mr. Epstein leave to amend his submissions. This also provided an opportunity for both sides to reexamine the terms of the settlement consistent with *Impink v. Reynes*, 396 N.J. Super. 553, 562 (App. Div. 2007).

At the very least, the Court expected that Mr. Epstein would take the Court's concerns to heart and carefully review -- and where necessary, alter -- each of his billing entries. However, his revised submission evidences no such careful review. While Mr. Epstein did individually bill each email at 0.01 attorney hours (3 minutes),[6] his revised submission reveals an embarrassing lack of knowledge and understanding as to why such revision was necessary. To wit, Mr. Epstein writes, "Query: why in the world would anyone want a lawyer to spend days and days writing billing entries for 1000s of emails and the other party's lawyer and the judge to spend

---

[6] While an improvement on the initial submission, the Court does not imply that such revisions are entirely satisfactory. *Compare C.G. & R.G.*, 2015 U.S. Dist. LEXIS 161281 at *14 (observing that some emails "should have taken Mr. Epstein seconds, not 3 minutes" to open and read).

days and days reviewing 1000s of entries?" [Docket Entry 197, Epstein Affidavit, p. 7 fn. 3][7]

These serious professional failings notwithstanding, the Court is constrained by its limited role in reviewing a settlement, and is mindful that settlement agreements are encouraged as a matter of

---

[7] For Mr. Epstein's benefit, the Court will repeat the answer to this question, which Mr. Epstein should know, given that nature of his practice, and the frequency with which he has applied to this Court for fees: "[i]n its evaluation, the district court must conduct more than a cursory review of the billing records, and must go line, by line through the billing records supporting the fee request." *P.N.*, 2007 U.S. Dist. LEXIS 29289 at *6 (Mr. Epstein appearing for Plaintiff); "'A court must do more than a cursory review of billing records and must go line, by line through the billing records supporting the fee request." *J.N.*, 2007 U.S. Dist. LEXIS 94067 at *7 (quoting *P.N.*)(Mr. Epstein appearing for Plaintiffs); "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks. A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." *L.J.*, 2009 U.S. Dist. LEXIS 31473 at *54-55 (Mr. Epstein appearing for Plaintiff); "[t]he district court must go line, by line through the billing records supporting the fee request. As part of the determination of reasonable hours expended, attorneys seeking fees must document the hours for which payment is sought with sufficient specificity." *T.B. v. Mount Laurel Bd. of Educ.*, 2012 U.S. Dist. LEXIS 44848 at *17 (D.N.J. Mar. 30, 2012)(Mr. Epstein appearing for Plaintiff); "[t]he Court must go line by line to determine whether Plaintiffs met their burden to justify the hours expended." *C.G.*, 2015 U.S. Dist. LEXIS 161281 at *9 (Mr. Epstein appearing for Plaintiffs). Further, it does not matter that the cases cited are in a different procedural posture than the instant case. At the time Mr. Epstein made the billing entries (or at least should have made the billing entries), he did not know whether this case would end by way of settlement or a judgment in his clients' favor.

public policy. *See generally Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("a strong public policy exists . . . favoring settlement of disputes, finality of judgments and the termination of litigation."); *Puder v. Buechel*, 183 N.J. 428, 437 (2005)("For nearly forty-five years, New Jersey courts have found that the settlement of litigation ranks high in the public policy of this State.")(internal citations and quotations omitted).

Moreover, while the Court recognizes it should take such statements with a grain of salt,[8] Plaintiffs have stated on the record that they are fully satisfied with the total amount of the settlement, and the specific amount that will be paid to Mr. Epstein. Nor is there anything in the record to suggest that Mr. Epstein's recordkeeping failings had the effect of lowering the minor's share of the settlement to the benefit of Mr. Epstein. If so, the result here would have been different.[9]

---

[8] See *Burd v. Hackensack Hosp. Ass'n*, 195 N.J. Super 35, 477 A.2d 843, 844 (N.J. Super App. Div. 1984)(noting difficulty lay person may have in assessing the reasonableness of attorneys' fees).

[9] The undersigned is aware that Senior District Judge Joseph H. Rodriguez, after a friendly hearing, recently rejected a proposed settlement between one of Mr. Epstein's clients and a school district. Senior Judge Rodriguez found that "the terms of the settlement [are] not fair and reasonable to the minor as they provide for attorneys' fees that are grossly disproportionate to the minor's recovery." *C.C. v. Eastern Camden County Regional School District*, 2017 U.S. Dist. LEXIS 46386 at *1. In *C.C.*, Mr. Epstein had been paid $98,000 for his work at the administrative level and later sought, along with co-counsel, $20,000 of a total settlement of $33,400 as part of a negotiated settlement of follow-on litigation in this Court.

Thus, the Court is faced with the following situation. After suggesting how to revise the attorney's fees portion of settlement at the first friendly hearing, and those suggestions apparently having been rejected, the Court must now either reject the settlement and essentially force unwilling parties[10] to continue this protracted litigation which centers on the well-being and education of a special needs child and risk the collateral harm that might follow, or accept the settlement. Under the circumstances, the Court concludes it has no viable choice but to accept the settlement as presented to the Court. If the amount of Mr. Epstein's fees were presented to the Court in a different procedural posture, Mr. Epstein likely would not be awarded, on the present record, the

---

The instant case is distinguishable. As Senior Judge Rodriguez specifically noted, *C.C.* "is not a case where Plaintiffs received equitable relief at the administrative level that cannot be quantified, but Plaintiff's counsel was not awarded fees." *Id.* at *17. In this case, most, if not all, of the relief obtained at the administrative level was equitable in nature and Mr. Epstein has represented to this Court that the fee described in the settlement is his total, and only, fee for four administrative proceedings and the current case over a span of five years.

However, as this opinion should make apparent, the undersigned shares Senior Judge Rodriguez's concerns regarding Mr. Epstein's billing practices and recordkeeping. *See C.C.*, 2017 U.S. Dist. LEXIS at *13 ("The Court finds that the amount of time logged and resulting fees are disproportionate to the activity reflected on the docket.").

[10]  Counsel for the Defendants kindly allowed the Court to discuss the settlement with the parent plaintiff *ex parte*, along with Mr. Epstein. Without revealing those discussions in detail, it is fair to say both parents, with the best interests of their child in mind, expressed their profound hope the Court would approve the settlement.

11

amount of fees that he will receive from the settlement of this case.

Other judges have expressed well-founded doubt concerning Mr. Epstein's future improved behavior. *See, e.g., J.L.*, 2016 U.S. Dist. LEXIS 110478 at *80 n. 36 ("Given Mr. Epstein's long history of questionable conduct in this District, the Court is skeptical that any [Rule 11] sanction would actually deter Mr. Epstein from engaging in similar litigation tactics in the future."). The undersigned also has doubts. Nonetheless, Mr. Epstein is invited to consider that any future fee application filed in this Court is a "new opportunity to demonstrate his good faith in making fee requests." *T.B.*, 2011 U.S. Dist. LEXIS 66682 at *27. "The Court hopes he will seize it." *Id.*

**IV.**

For the reasons set forth above, the Motion for Settlement Approval will be granted. An appropriate Order and Judgment accompany this Opinion.

At Camden, New Jersey       ___s/ Noel L. Hillman_____
Dated: April 12, 2017      **Noel L. Hillman, U.S.D.J.**